**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PAUL RIECKHOFF, KRISTEN L. ROUSE, INDEPENDENT VETERANS OF AMERICA ACTION (d/b/a INDEPENDENT VETERANS OF AMERICA), and INDEPENDENT VOTER PROJECT,

Plaintiffs,

v.

HENRY T. BERGER and PETER S. KOSINSKI, in their official capacities as Co-Chairs and Commissioners of the New York State Board of Elections; ESSMA BAGNUOLA and ANTHONY J. CASALE, in their official capacities as Commissioners of the New York State Board of Elections; and KRISTEN ZEBROWSKI STAVISKY and RAYMOND J. RILEY III, in their official capacities as Co-Executive Directors of the New York State Board of Elections; THE BOARD OF ELECTIONS IN THE CITY OF NEW YORK; MICHELE A. SILEO, GINO A. MARMORATO, JOSE MIGUEL ARAUJO, MICHAEL J. COPPOTELLI, MARC A. LANDIS, FRANK R. SEDDIO, SIMON SHAMOUN, KEITH SULLIVAN, and FREDERIC M. UMANE, in their official capacities as Commissioners of Elections constituting the Board of Elections in the City of New York; and MICHAEL J. RYAN, in his official capacity as Executive Director of the Board of Elections in the City of New York,

Defendants.

Civil Action No. 26-CV-08655

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

42 U.S.C. § 1983; First and Fourteenth Amendments to the United States Constitution

Plaintiffs Paul Rieckhoff and Kristen L. Rouse, registered voters residing in the State of New York (the "Individual Plaintiffs"), and Plaintiffs Independent Veterans of America Action

(d/b/a Independent Veterans of America) and Independent Voter Project (the "Organizational Plaintiffs," and together with the Individual Plaintiffs, "Plaintiffs"), by and through their undersigned counsel, bring this action under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments to the United States Constitution against the Commissioners and Co-Executive Directors of the New York State Board of Elections, each sued in his or her official capacity (the "State Board Defendants"), and against the Board of Elections in the City of New York, its Commissioners of Elections, and its Executive Director, each sued in his or her official capacity (the "City Board Defendants," and together with the State Board Defendants, "Defendants"). Allegations concerning Plaintiffs themselves are made on personal knowledge; all other allegations are made on information and belief and upon investigation of counsel.

## NATURE OF THE ACTION

1. This action challenges a decision made by the State of New York, not by any political party: the decision to condition a qualified voter's participation in the publicly funded and publicly administered primary election, the stage of New York's election process that in much of the State determines who will hold public office, on that voter's enrollment in a political party and public declaration of that affiliation. Plaintiff Rieckhoff is a registered, qualified New York voter and a combat veteran who declines to enroll in a political party. Plaintiff Rouse is a registered, qualified New York voter and a veteran of thirty-two years of military service who enrolled in a political party solely in order to vote in primary elections, has now withdrawn from party enrollment, and will be denied a ballot in every future primary as a result. The Organizational Plaintiffs are nonpartisan organizations who serve nonpartisan voters, including New York voters who decline to enroll in a party and New York voters who have enrolled in a party solely in order to vote and would not otherwise do so.

2. This paragraph states the claim; Plaintiffs ask the Court to hold them to it. Plaintiffs do not assert a right to vote in any political party's nominating process, and they do not ask this Court to order any party to admit non-members to that process. No political party is a defendant. The relief Plaintiffs seek leaves every party free to determine its own membership, to endorse, and to nominate by any method the party chooses. They challenge the State's decision to conduct the integral stage of its public elections in a form that no qualified voter may enter without joining, and publicly declaring membership in, a private association, when the State has several ways to conduct that stage that give every qualified voter a ballot and do not severely burden the associational rights of either parties or voters. *California Democratic Party v. Jones*, 530 U.S. 567, 585-86 (2000); *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 452-53, 458-59 (2008); N.Y. Elec. Law § 5-210(5)(f).

3. The New York Election Law defines a "primary election" as "only the mandated election at which enrolled members of a party may vote for the purpose of nominating party candidates and electing party officers." N.Y. Elec. Law § 1-104(9). At the polls, a voter "shall be permitted to vote only in the primary of the party in which such record shows the voter to be enrolled." N.Y. Elec. Law § 8-302(4). A registered voter who declines to enroll in a party may not vote in any primary election at all. That election is conducted by public boards of elections and paid for with public funds, N.Y. Elec. Law § 4-136, and, with limited exceptions, it is the mechanism by which party nominees are placed on the general election ballot. N.Y. Elec. Law § 6-110.

4. The right to vote is an individual right, and it belongs to every qualified voter equally. It includes the right to cast a meaningful vote at every integral stage of a public election, including the primary, and it does not depend on the voter's willingness to join a political party.

The constitutional standard in this case is equality: the same opportunity to cast a meaningful vote, for every qualified voter, regardless of party affiliation.

5. The class of voters denied the ballot is not small. According to the State Board of Elections' official enrollment report as of February 20, 2026, New York had 12,547,142 active registered voters. Of them, 3,187,610, or 25.4 percent, were registered without any party enrollment, and 3,709,160, or 29.6 percent, were not enrolled in either the Democratic or the Republican Party. More New Yorkers are registered with no party than are enrolled in the Republican Party. On information and belief, an estimated 140,000 of them are military veterans. Every one of them is denied a ballot in every primary election in New York because he or she has exercised the right not to associate with a political party.

6. The condition is not a formality that a voter can satisfy at the polls and undo the next day. A registered voter who wishes to enroll in a party in order to vote in the June primary must do so by February 14, and any change received after that date takes effect only on the seventh day after the primary. N.Y. Elec. Law § 5-304(3). The enrollment is made on a registration form signed under a prescribed affidavit that carries criminal penalties for false statements, N.Y. Elec. Law § 5-210(5)(k)(xii), and it is a public record open to inspection by any person, N.Y. Elec. Law § 3-220(1), published annually in enrollment lists that the board of elections must sell to any purchaser, N.Y. Elec. Law § 5-604(1), and on that basis obtained and used by political parties, candidates, and campaigns.

7. The Supreme Court has held that a political party's right to exclude non-members from its nominating election is protected by the First Amendment and that a State may not override it without satisfying strict scrutiny. *Jones*, 530 U.S. at 582. A party's right of association is, itself, a derivative right. It is the aggregated right of the individuals who compose it. *Roberts*

*v. United States Jaycees*, 468 U.S. 609, 622 (1984); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958). The Constitution cannot afford the aggregate a stronger right of non-association than it affords the individual. When the State conditions a qualified voter's participation in the integral stage of a public election on joining a party, it burdens the same right the Court protected in *Jones*, and the same level of scrutiny applies.

8. New York has choices. The Supreme Court has recognized that a State may conduct a nonpartisan primary in which all qualified voters participate and the top vote-getters advance regardless of party, without severely burdening any party's associational rights. *Jones*, 530 U.S. at 585-86; *Washington State Grange*, 552 U.S. at 452-53, 458-59. New York law already permits a party to admit unenrolled voters to its primary by rule, N.Y. Elec. Law § 5-210(5)(f), as many States do by statute. The State could conduct a separate public primary ballot for voters not enrolled in any party. Or it could leave nomination to the parties by convention or petition and conduct a single public primary for everyone, since a State need not provide parties a nominating forum at all. *Washington State Grange*, 552 U.S. at 452-53. Which of these the State adopts is for the Legislature. What the Constitution does not permit is the choice New York has made: to disenfranchise more than three million qualified voters from an important stage of the State’s public election process.

9. Plaintiffs seek a declaration that the provisions of the New York Election Law that condition participation in publicly funded, non-presidential primary elections on party enrollment are unconstitutional on their face and as applied to unenrolled voters, and a preliminary and permanent injunction restraining Defendants from enforcing that condition.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure, and injunctive relief under Rule 65.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2). The State Board Defendants are officers of the State of New York whose official duties extend throughout the State, including this District. The City Board Defendants reside and perform their official duties in this District. Plaintiff Rieckhoff resides and is registered to vote in New York County, within this District, and the denial of a primary ballot to him and to voters the Organizational Plaintiffs serve who reside in this District occurred and will occur in this District. Plaintiff Rouse resides and is registered to vote in Kings County; the City Board, which resides in this District, administers primary elections in Kings County as well as New York County and will withhold a primary ballot from her.

12. The State Board Defendants are sued in their official capacities for prospective declaratory and injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908). The City Board Defendants are sued for prospective declaratory and injunctive relief under 42 U.S.C. § 1983 and under this Court's equitable authority to enjoin officials from enforcing an unconstitutional statute. Each Defendant has a direct connection to the administration and enforcement of the challenged provisions, as alleged below.

## THE PARTIES

**A. Individual Plaintiffs**

13. Plaintiff Paul Rieckhoff is a citizen of the United States and a resident of the Borough of Manhattan, New York County, New York. He was born in New York and raised in Garrison, Putnam County, New York. He was a first responder at the World Trade Center on September 11, 2001. He served in the United States Army as a first lieutenant and infantry rifle platoon leader, volunteered for service in Iraq, and spent nearly a year conducting combat operations in Baghdad, returning in 2004. On his return he founded Iraq and Afghanistan Veterans of America, a nonpartisan organization, which he led for fifteen years. In 2024 he founded Plaintiff Independent Veterans of America Action, of which he is founder and Chief Executive Officer.

14. Plaintiff Rieckhoff is registered to vote in New York County, in the 61st Election District of the 61st Assembly District, and has not been enrolled in any political party for more than twenty years. He has never sought, and does not seek, to participate in any political party's selection of its nominees. He seeks to cast a ballot at the stage of New York's public elections that determines who will represent him, without being required to join a political party and publicly declare that affiliation as the price of doing so.

15. Because he is not enrolled in a party, Plaintiff Rieckhoff was denied a ballot in the June 23, 2026 primary election. The contests on the ballot in his election district that day were Democratic primaries for State Comptroller, for Representative in Congress in the Tenth Congressional District, and for State Senator in the Twenty-Seventh Senate District. Each was contested; each was closed to him. In the congressional primary, enrolled Democrats denied renomination to the incumbent Member of Congress. In his districts the primary is the election that decides who holds office. In the November 2024 general election, the Democratic nominee

received 81.0 percent of the votes cast for Representative in Congress in the Tenth District and ran unopposed for State Senator in the Twenty-Seventh District and for Member of Assembly in the Sixty-First District; in November 2022, the Democratic nominee received 83.5 percent for Congress and 95.4 percent for State Senate, with no Republican on the ballot, and ran unopposed for Assembly. N.Y. State Bd. of Elections, Certified Results, June 23, 2026 Primary Election; N.Y. State Bd. of Elections, Elections Database, certified results, November 5, 2024 and November 8, 2022 general elections, https://results.elections.ny.gov (shares computed as the winner's votes on all lines over all votes cast for candidates, including write-ins). He will be denied a ballot in any primary held in his district in June 2027, in the June 2028 primary at which nominees for Congress and the State Legislature will be selected, and in every primary thereafter unless he enrolls in a party by February 14 of the election year.

16. Plaintiff Kristen L. Rouse is a citizen of the United States and a resident of the Borough of Brooklyn, Kings County, New York, where she has lived since 2007. She served in the United States Army, the Army Reserve, and the Army National Guard for thirty-two years, including three tours of duty in Afghanistan. She founded the NYC Veterans Alliance, served for three years as Deputy Director of the New York State Department of Veterans' Services, and owns TrueBoots LLC, a veteran-owned consulting firm. She is a member of Plaintiff IVA.

17. Plaintiff Rouse is registered to vote in Kings County, in the 59th Election District of the 52nd Assembly District, within the Tenth Congressional District and the Twenty-Sixth Senate District. She has never wished to be a member of a political party. In 2007 she nonetheless enrolled in the Democratic Party for one reason: it was the only way to cast a ballot in the primary elections that, in her districts, decide who holds office. In 2021, as a matter of conscience, she ended her enrollment in the Democratic Party and enrolled in the Working

Families Party, believing that enrollment would allow her to continue voting in primary elections. It did not. The Working Families Party holds no primary elections in the districts in which she resides, and her enrollment in it excluded her from the Democratic primaries that decide who holds office there, including the June 23, 2026 Democratic primaries for State Comptroller, for Representative in Congress in the Tenth Congressional District, and for Member of Assembly in the Fifty-Second Assembly District, each of which was contested. The Working Families Party held no primary election in any of her districts in 2022, 2024, or 2026. Bd. of Elections in the City of N.Y., Statement and Return Report by Election District, Primary Election, June 23, 2026, Kings County (Democratic): Representative in Congress, 10th Congressional District; Member of the Assembly, 52nd Assembly District; Bd. of Elections in the City of N.Y., Statement and Return Report by Election District, General Election, November 5, 2024, Kings County: State Senator, 26th Senatorial District; N.Y. State Bd. of Elections, Elections Database, https://results.elections.ny.gov (Working Families primaries, 2022 and 2024); Bd. of Elections in the City of N.Y., Certified Results, June 23, 2026 Primary Election (Kings County). Throughout the years she was enrolled, her party affiliation was a public record, published in the enrollment lists and available to every party, candidate, and campaign, and on the basis of that record she received solicitations by mail, telephone, email, and in-person canvassing at her residence from candidates and campaigns of the party in which she was enrolled. She never wished to become a member of either party or to take part in its affairs; she enrolled because it was the only way to cast a ballot in the elections that decide who holds office.

18. On or about September 24, 2026, Plaintiff Rouse filed with the City Board a change of enrollment withdrawing from the Working Families Party. As of the filing of this Complaint, the City Board's public records had not yet been updated to reflect that change. Once

the City Board processes it she will be registered without party enrollment, as she intends to remain. She will be denied a ballot in any primary held in her districts in June 2027, in the June 2028 primary at which nominees for Congress and the State Legislature will be selected, and in every primary thereafter unless she again enrolls in a party by February 14 of the election year. She does not seek to participate in any political party's selection of its nominees. She seeks the same opportunity as every other qualified voter to cast a ballot at the primary stage of New York's public elections.

**B. Organizational Plaintiffs**

19. Plaintiff Independent Veterans of America Action, publicly known as Independent Veterans of America ("IVA"), is a nonpartisan, nonprofit membership organization exempt from federal income tax under Section 501(c)(4) of the Internal Revenue Code, organized under the laws of the Commonwealth of Virginia, with its principal office at 20 Massachusetts Avenue NW, Washington, D.C. 20001. IVA was founded in 2024 to organize politically independent veterans. Veterans join IVA, which calls its membership the Pack, by enrolling through IVA's website and providing their name, address, and veteran status. Members receive IVA's news and communications, are invited to IVA events in their area and to volunteer and contribute, receive campaign resources and media and technology training, and may apply for IVA's endorsement and support as candidates for public office. Through its Let Vets Vote campaign, IVA advocates for the right of unaffiliated veterans to vote in primary elections. IVA's members include military veterans registered to vote in New York without party enrollment who are denied a ballot in every New York primary as a result, and veterans who have enrolled in a party solely in order to vote in primaries and would not otherwise do so. IVA has 3,922 members in the State of New York. Plaintiff Rieckhoff is a member of IVA and its founder and Chief Executive Officer, and

Plaintiff Rouse is a member of IVA; their injuries are described above. IVA brings this action on behalf of them and its other New York members, and will identify additional members, and seek to join them as plaintiffs, by amendment. The interests IVA seeks to protect are germane to its purpose, and neither the claims asserted nor the relief requested requires the participation of individual members. Because each unenrolled New York voter is injured in the same manner by the challenged provisions, individualized analysis of IVA's members is unnecessary.

20. Plaintiff Independent Voter Project ("IVP") is a nonpartisan California nonprofit corporation exempt from federal income tax under Section 501(c)(4) of the Internal Revenue Code, with its principal office at 2700 Adams Avenue, Suite 202, San Diego, California 92116. IVP's mission is to inform voters about public policy and to secure for voters who decline to join a political party the same opportunity to participate in public elections as every other qualified voter. IVP has litigated that question on behalf of unenrolled voters in other States. Thousands of New York voters receive IVP's publications and follow its digital channels, and New York voters have signed IVP's petition, Open Primaries for Every Voter, which calls for every registered voter to be permitted to participate in publicly funded primary elections regardless of party affiliation. IVP is a partner with IVA in the Let Vets Vote campaign, which works to protect the voting rights of New Yorkers, including veterans, who decline to enroll in a party. Plaintiffs Rieckhoff and Rouse are among IVP's New York supporters, and IVP brings this action with them and with IVA on behalf of the unenrolled New York voters it serves, whose injury is described above and is identical for each of them. IVP will identify additional New York voters it serves, and will seek to join them as plaintiffs, by amendment.

**C. Defendants**

21. The New York State Board of Elections (the "State Board") is established within the Executive Department of the State of New York, N.Y. Elec. Law § 3-100, and has "jurisdiction of, and [is] responsible for, the execution and enforcement of" the statutes governing elections. N.Y. Elec. Law § 3-104(1)(b). Defendants Henry T. Berger and Peter S. Kosinski are the Co-Chairs and Commissioners of the State Board, and Defendants Essma Bagnuola and Anthony J. Casale are Commissioners of the State Board. The Commissioners exercise the powers and perform the duties of the State Board under Article 3 of the Election Law. Defendants Kristen Zebrowski Stavisky and Raymond J. Riley III are the Co-Executive Directors of the State Board and are responsible for its day-to-day administration; Defendant Stavisky has been designated New York's Chief Election Official. Each of the State Board Defendants is sued in his or her official capacity only.

22. Defendant Board of Elections in the City of New York (the "City Board") is the board of elections for the five counties of the City of New York, including New York County and Kings County, established under N.Y. Elec. Law § 3-200. The City Board registers voters and records and maintains their party enrollment, N.Y. Elec. Law §§ 5-210, 5-302, 5-304; prepares the registration poll records and computer-generated registration lists from which voters are checked in at the polls, N.Y. Elec. Law § 5-500 et seq.; appoints the election inspectors who staff the polls, N.Y. Elec. Law §§ 3-400, 3-404; conducts primary elections within the City; and, through its inspectors, determines at the polls whether a voter may receive a primary ballot and of which party. N.Y. Elec. Law § 8-302(4). Defendants Michele A. Sileo, Gino A. Marmorato, Jose Miguel Araujo, Michael J. Coppotelli, Marc A. Landis, Frank R. Seddio, Simon Shamoun, Keith Sullivan, and Frederic M. Umane are the Commissioners of Elections constituting the City Board, N.Y. Elec. Law § 3-200(3); Defendant Sileo is its President and Defendant Marmorato its

Secretary. Defendant Michael J. Ryan is the Executive Director of the City Board and is responsible for its day-to-day administration. Each is sued in his or her official capacity only. The City Board Defendants are the officials who denied Plaintiff Rieckhoff a primary ballot in June 2026, who maintain Plaintiff Rouse's enrollment record and will withhold a primary ballot from her once her withdrawal from party enrollment takes effect, and who will issue or withhold a primary ballot from each of them and from voters served by the Organizational Plaintiffs residing in the City of New York at every future primary. This Court has previously enjoined the City Board to permit unenrolled voters to vote in a party primary. *Independence Party of Richmond County v. Graham*, 332 F. Supp. 2d 690 (S.D.N.Y. 2004) (directing the City Board to take all necessary steps to ensure that unaffiliated registered voters could participate in the Independence Party primary), appeal dismissed as moot, 413 F.3d 252 (2d Cir. 2005).

23. The State Board's connection to the enforcement of the challenged provisions is direct. It prescribes the statewide voter registration form on which a voter's enrollment is recorded, N.Y. Elec. Law § 5-210(5); maintains the statewide voter registration list that serves as the official list for the conduct of all elections in the State administered by local boards, N.Y. Elec. Law § 5-614(1), (3)(b), (3)(h); promulgates the rules, regulations, instructions, and directives under which county boards determine at the polls whether a voter may receive a primary ballot, N.Y. Elec. Law § 3-102; certifies to the county boards the candidates and party primary ballots for offices whose designations are filed with the State Board, N.Y. Elec. Law § 4-110; and, through its chief enforcement counsel, investigates alleged violations of the Election Law and refers violations for prosecution. N.Y. Elec. Law § 3-104(1)(b), (5)(b). The State Board is empowered to visit boards of elections, examine their procedures, and direct that those procedures be modified, N.Y. Elec. Law § 3-102, and the City Board and every county board

administer primary elections under the State Board's rules, instructions, and directives and on the basis of the statewide registration list. N.Y. Elec. Law §§ 3-102, 5-614(3)(h). At all relevant times, Defendants have acted and will continue to act under color of the statutes, regulations, customs, and usages of the State of New York.

## NEW YORK'S PARTISAN PRIMARY ELECTION SCHEME

24. Party nominations of candidates for offices to be filled at a general election are, with limited exceptions, made at the primary election, N.Y. Elec. Law § 6-110, which is held on the fourth Tuesday in June before every general election. N.Y. Elec. Law § 8-100(1)(a). The Election Law defines the primary election as "only the mandated election at which enrolled members of a party may vote for the purpose of nominating party candidates and electing party officers," N.Y. Elec. Law § 1-104(9), and provides that at a primary a voter "shall be permitted to vote only in the primary of the party in which such record shows the voter to be enrolled." N.Y. Elec. Law § 8-302(4). A registered voter who is not enrolled in a party may not vote in any primary election.

25. A voter may designate a party enrollment at the time of registration, N.Y. Elec. Law § 5-300, and the board of elections enters the party designated on the voter's registration record. N.Y. Elec. Law § 5-302(1). A voter who declines to designate a party is registered without enrollment. A registered voter may later enroll in or change parties, but "any change of enrollment received by the board of elections after February fourteenth and before or on seven days after the June primary shall take effect on the seventh day after the June primary." N.Y. Elec. Law § 5-304(3). An unenrolled voter who wishes to vote in a June primary must therefore enroll in a party by February 14 of that year, more than four months before the primary and

nearly four months before the deadline by which a New Yorker may register to vote in the same election. N.Y. Elec. Law § 5-210(3); see N.Y. Const. art. II, § 5.

26. Primary elections are administered by the county boards of elections, and in the City of New York by the Board of Elections in the City of New York, under the supervision of the State Board. The expenses of conducting primary elections are paid from public funds. N.Y. Elec. Law § 4-136.

27. New York's own Constitution treats participation in a primary election as part of the franchise. Article I, Section 1 provides that no member of the State shall be disfranchised, "except that the legislature may provide that there shall be no primary election held to nominate candidates for public office or to elect persons to party positions for any political party or parties ... whenever there is no contest or contests for such nominations or election." N.Y. Const. art. I, § 1. That exception exists for a reason: if eliminating a primary did not take anything away from voters, the Constitution would not need to give the Legislature permission to skip it.

28. A voter's party enrollment is a public record. Registration records, including enrollment, "shall be public records and open to public inspection." N.Y. Elec. Law § 3-220(1). Each board of elections must publish annually an enrollment list for every election district that includes "the party enrollment of each voter," must keep copies for public inspection, and must sell surplus copies at a charge not exceeding the cost of publication. N.Y. Elec. Law § 5-604(1). The enrollment is made on the statewide registration form prescribed by the State Board, which contains a space for the applicant's choice of party enrollment "with a clear alternative provided for the applicant to decline to affiliate with any party," N.Y. Elec. Law § 5-210(5)(k)(x), and which the applicant signs under an affidavit affirming that the information on the application is true and acknowledging that a false statement is punishable by a fine of up to $5,000,

imprisonment for up to four years, or both. N.Y. Elec. Law § 5-210(5)(k)(xii). A New York voter therefore cannot vote in a primary without making a sworn, public declaration of political affiliation that is recorded by the State, open to inspection by any person, and published in lists that political parties, candidates, and campaigns obtain and use.

29. New York law does not treat enrollment as indispensable to the conduct of a primary. The registration form must give notice that "in order to vote in a primary election of a political party, a voter must enroll in that political party, unless state party rules allow otherwise." N.Y. Elec. Law § 5-210(5)(f). In *State Committee of the Independence Party of New York v. Berman*, 294 F. Supp. 2d 518 (S.D.N.Y. 2003), this Court declared § 8-302(4) unconstitutional to the extent it barred unenrolled voters from Independence Party primaries for statewide offices that the party's rules had opened to them. The State Board's Office of Counsel states in its annual Election Law Update that a party may, by rule, allow voters not enrolled in any party to vote in its primary. N.Y. State Bd. of Elections, Office of Counsel, Election Law Update 2026, at 10; Election Law Update 2025, at 7. None of the four political parties presently qualified in New York, the Democratic, Republican, Conservative, and Working Families Parties, has adopted such a rule. Whether a qualified New York voter may cast a ballot at the integral stage of a public election therefore depends, under the Election Law, on the internal rules of private associations, and every such association has chosen to close its primary.

**<u>THE CLAIM THIS ACTION DOES NOT ASSERT</u>**

30. In *Nader v. Schaffer*, 417 F. Supp. 837 (D. Conn.), summarily aff'd, 429 U.S. 989 (1976), unaffiliated Connecticut voters sought a declaration of their right to vote in party primaries. The three-judge court weighed the voters' interest in participating in the party's primary against the party members' associational interest in excluding them, and held that the

latter prevailed, reasoning in substance on the premise that the alternative to the closed primary was to require the party to accept non-members in the selection of its nominee. 417 F. Supp. at 844-49; see *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 212 (1986) (describing *Nader* as brought by "an independent voter who sought a declaration of his right to vote in the Republican primary"). The precedential effect of the Supreme Court's summary affirmance extends no further than the precise issues presented and necessarily decided. *Anderson v. Celebrezze*, 460 U.S. 780, 784 n.5 (1983); *Mandel v. Bradley*, 432 U.S. 173, 176 (1977) (per curiam).

31. Plaintiffs do not seek what the *Nader* plaintiffs sought. They do not claim a right to participate in any party's selection of its nominee, and they do not ask the Court to weigh their interests against any party's interest in excluding them, because the relief they seek requires no party to include them. The premise on which *Nader* rested, that protecting unaffiliated voters required forcing the party to accept them, is one the Supreme Court has since rejected. The Court has since held that a party's right to exclude non-members receives strict scrutiny, *Jones*, 530 U.S. at 582; that a party has no corresponding right to compel the State to admit voters enrolled in other parties to its state-run primary, *Clingman v. Beaver*, 544 U.S. 581, 597 (2005); that a State may conduct its primary without providing parties any nominating forum at all, *Washington State Grange*, 552 U.S. at 452-53; and that compelled disclosure of associational affiliation is subject to exacting scrutiny and must be narrowly tailored to the interest asserted, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 608-11 (2021).

## <u>FACTUAL ALLEGATIONS</u>

32. According to the State Board's official report of voters registered as of February 20, 2026, New York had 12,547,142 active registered voters, of whom 6,002,006 (47.8 percent)

were enrolled in the Democratic Party, 2,835,976 (22.6 percent) in the Republican Party, 160,464 in the Conservative Party, 59,617 in the Working Families Party, and 301,469 in other political bodies, and 3,187,610 (25.4 percent) were registered with no party enrollment. The share of voters who decline to enroll has grown steadily: unenrolled active voters numbered 2,132,416, or 20.0 percent of active registration, on November 1, 2010. Over that period the number of unenrolled active voters grew by 49.5 percent, while total active registration grew by 17.5 percent.

33. In the City of New York, as of February 20, 2026, 1,058,238 active voters (21.3 percent) were unenrolled, nearly twice the 536,810 enrolled Republicans. In New York County, 211,545 voters were unenrolled and 79,775 were enrolled Republicans; in Bronx County, 146,520 were unenrolled and 55,254 were enrolled Republicans. In the eight counties of this District, 752,505 active voters, 23.3 percent, were unenrolled.

34. In much of New York, the general election does not offer a meaningful vote. In a substantial number of congressional, state legislative, and local districts, one party's enrollment advantage is so large that the general election ratifies a result already determined in that party's primary. Under New York's closed primary system, only voters enrolled in that party may participate in the election where the outcome is decided. Every other voter in the district, including every independent voter, is left with no election at which their ballot can affect who holds the office. In the November 2024 general election, of the 239 contests for Representative in Congress, State Senator, and Member of Assembly, 77, nearly one in three, had no opponent on the ballot other than write-in candidates, and another 134 were decided by margins exceeding ten percentage points. Only 28, fewer than one in eight, were decided by ten points or less: five of twenty-six congressional seats, eight of sixty-three State Senate seats, and fifteen of one hundred

fifty Assembly seats. Nineteen State Senate seats and fifty-eight Assembly seats were filled without a contest. In those districts, the Election Law withholds any ballot that matters from a voter who declines to enroll in a party. N.Y. State Bd. of Elections, Elections Database, certified results, https://results.elections.ny.gov (margins computed as the winner's share of votes cast for candidates, combining party lines, less the runner-up's share).

35. Participation in New York's closed primaries is low. In the June 2026 primary, no primary was held for Governor in either major party because each party's nomination was uncontested and the designated candidates were deemed nominated without balloting, N.Y. Elec. Law § 6-160(2); see N.Y. State Bd. of Elections, Certification of the June 23, 2026 Primary Election Ballot (May 13, 2026); and the only contested statewide primary, the Democratic primary for Comptroller, drew 977,559 ballots, of which 907,318 were votes for a candidate, roughly seven percent of the State's active registered voters. N.Y. State Bd. of Elections, Certified Results, June 23, 2026 Primary Election (State Comptroller, Democratic). In the June 2025 primary, at which the City of New York nominated candidates for Mayor and other municipal offices, 1,107,203 ballots were cast in the City, while 1,097,407 registered City voters, 20.6 percent of the City's electorate, were unaffiliated with any party and ineligible to vote. N.Y.C. Campaign Fin. Bd., 2025 Voter Analysis Report, at 45, 48-49. The City's own Campaign Finance Board has described the combination of the closed primary and the February 14 enrollment deadline as "one of the most restrictive primary systems in the country." Id. at 7. In safe districts, nominees who are effectively assured of election in November are thus selected by a small fraction of a single party's enrolled members, while every unenrolled voter in the district is excluded. The districts of Plaintiffs Rieckhoff and Rouse, described above, are examples.

36. New York is home to more than 580,000 military veterans. U.S. Census Bureau, American Community Survey, 2020-2024 5-Year Estimates, Table S2101 (New York). Veterans who took an oath to support and defend the Constitution and who choose not to join a political party are denied a ballot in the primary elections that, in much of the State, determine who will represent them.

37. Enrolled voters are eligible to participate at both stages of the State's election process: the primary and the general election. Unenrolled voters are eligible at only one. They cannot cast a ballot at the stage that, in much of the State, decides the election, without forfeiting their right not to associate. Every qualified voter is entitled to the same vote, at every stage of a public election, regardless of party affiliation.

38. Many New York voters enroll in a political party solely in order to vote in primary elections, even though they would prefer to remain unenrolled. The voters Organizational Plaintiffs serve have done so, and Plaintiff Rouse did so, as described above. Because enrollment is a public record and is published in enrollment lists, an enrolled voter's political affiliation is available to the State, to every political party and campaign, and to any member of the public, and enrolled voters receive partisan solicitations directed to them on the basis of their recorded affiliation. Plaintiff Rouse's affiliation was so published, and so used, for the years she was enrolled. The justification the *Nader* court accepted for public enrollment rolls, that candidates and parties need to know who is in the electorate in order to solicit them, see *Nader*, 417 F. Supp. at 847-48, describes the disclosure that Plaintiffs challenge.

39. The statutory purpose of New York's primary election is the nomination of party candidates and the election of party officers by the enrolled members of a party. N.Y. Elec. Law § 1-104(9). Political parties are private associations. The State nonetheless conducts the parties'

nominating elections through public boards of elections, at public polling places, with publicly compensated election workers, at public expense, and denies a ballot in them to every voter who is not a party member.

40. A primary that does not condition participation on party enrollment is not a hypothetical, and can take many forms. Washington conducts a primary in which every qualified voter, regardless of party, receives the same ballot and the State selects no party's nominee; the Supreme Court rejected a facial challenge to that system by the political parties, holding that because the primary does not by its terms select any party's nominee it does not on its face severely burden the parties' associational rights. *Washington State Grange*, 552 U.S. at 452-53, 458-59. Many States conduct primaries in which voters enrolled in no party may cast a party's primary ballot, and New York's own law permits that whenever a party's rules allow it. N.Y. Elec. Law § 5-210(5)(f); *Berman*, 294 F. Supp. 2d 518. A State may also provide a separate primary ballot for voters enrolled in no party, or may leave nomination to the parties by convention or petition and conduct a single public primary for all voters. The City of New York itself fills vacancies in the offices of Mayor and Council Member, when a special election is required, through elections in which nominations are by independent nominating petition rather than by party, N.Y.C. Charter §§ 10(c)(4)-(5), (7), 25(b)(4)-(5), (7), so that every qualified voter, regardless of enrollment, votes on the same ballot. Under each of these designs, for example, no party member is compelled to associate with a non-member in the selection of the party's nominee unless the party chooses to admit non-members; no voter is compelled to join or publicly declare affiliation with a party in order to vote; and the State's interests in orderly administration, in preventing raiding, and in an accurate voter roll are served without conditioning any qualified voter's ballot on party enrollment. *Jones*, 530 U.S. at 585-86.

41. This action concerns primary elections for state and local office and for federal legislative office. It does not challenge the presidential primary, at which enrolled voters select delegates to the parties' national conventions.

42. Defendants have enforced, and unless enjoined will continue to enforce, the challenged provisions of the Election Law, including by prescribing registration and enrollment forms, promulgating rules for the conduct of primary elections, supervising the county boards of elections in the administration of primary elections, and certifying candidates and results of primary elections.

## FIRST CAUSE OF ACTION

**42 U.S.C. § 1983: Denial of the Right to Vote at an Integral Stage of the Election Process (Fourteenth Amendment)**

43. Plaintiffs incorporate the foregoing paragraphs of this Complaint as if fully set forth herein.

44. The right to vote is a fundamental right. Once a State has granted the franchise, a law that denies the vote to a class of otherwise qualified residents is subject to strict scrutiny and must be necessary to promote a compelling state interest. *Kramer v. Union Free School District No. 15*, 395 U.S. 621, 626-27 (1969); *Harper v. Virginia State Board of Elections*, 383 U.S. 663, 667-70 (1966); *Dunn v. Blumstein*, 405 U.S. 330, 336-37 (1972). The right includes the right to participate on an equal basis in every integral stage of the election process. *Reynolds v. Sims*, 377 U.S. 533, 561-62, 565-66 (1964); *Hadley v. Junior College District of Metropolitan Kansas City*, 397 U.S. 50, 56 (1970). The Supreme Court has long recognized that where a State has made the primary an integral part of the procedure of choice, or where the primary effectively controls the choice, the right of qualified voters to participate in that primary is protected by the Constitution.

*United States v. Classic*, 313 U.S. 299, 318 (1941) (right to vote for Members of Congress under Article I, Section 2).

45. New York has made the party primary, with limited exceptions, the mechanism by which party nominees are placed on its general election ballot, N.Y. Elec. Law §§ 1-104(9), 6-110, and in much of the State the primary effectively controls the choice of officeholder. New York's own Constitution recognizes that the cancellation of a primary implicates the guarantee against disfranchisement. N.Y. Const. art. I, § 1.

46. The challenged provisions do not regulate the time, place, or manner in which qualified voters cast ballots. They deny the ballot at an integral stage of the election to an entire class of qualified voters, more than three million New Yorkers, defined by their exercise of a constitutional right. This is a denial of the franchise governed by Kramer, Harper, and Dunn, not a regulation of election mechanics governed by *Anderson*, 460 U.S. 780, and *Burdick v. Takushi*, 504 U.S. 428 (1992).

47. The State cannot cure a denial of the voting franchise by requiring the voter to forfeit a different constitutional right. A voter's ability to regain his or her voting rights by forfeiting their right of non-association with an organization they don’t support is not a lesser burden; it is the constitutional injury. See *Dunn*, 405 U.S. at 341-42. Party membership bears no relation to a voter's qualification to participate in a public election, and a qualification unrelated to voter competence is a capricious or irrelevant factor and the degree of discrimination is irrelevant. *Harper*, 383 U.S. at 668; see *Crawford v. Marion County Election Board*, 553 U.S. 181, 189 (2008) (plurality opinion). Nor is the denial self-imposed: Plaintiffs Rieckhoff and Rouse and the voters Organizational Plaintiffs serve do not refrain from voting in the primary; the State refuses them a ballot because of their political belief and their refusal to make a

compelled public affirmation of affiliation. *Carrington v. Rash*, 380 U.S. 89, 94-96 (1965) (State may not disenfranchise a class of voters because of the way they may vote).

48. In the alternative, if the Court applies the framework of *Anderson* and *Burdick*, the burden the challenged provisions impose is severe, both in what the voter loses and in what the State demands as the price of avoiding the loss. What the voter loses is the only ballot that matters in a substantial number of New York districts. What the State demands is not a ministerial act at the polls but enrollment in a private association more than four months in advance, N.Y. Elec. Law § 5-304(3); a sworn public record of that affiliation, open to inspection and published in enrollment lists, N.Y. Elec. Law §§ 3-220(1), 5-604(1); and no ability to withdraw the affiliation with effect until after the primary has been held. Compare *Clingman*, 544 U.S. at 590 (plurality opinion) (quoting *Jones*, 530 U.S. at 596 (Stevens, J., dissenting)) (voter may join a party "merely by asking for the appropriate ballot at the appropriate time or (at most) by registering within a state-defined reasonable period of time before an election"), with *Kusper v. Pontikes*, 414 U.S. 51, 60-61 (1973) (twenty-three-month lock on changing party affiliation unconstitutional). Unlike the voters in *Rosario v. Rockefeller*, 410 U.S. 752 (1973), and *Clingman*, who wished to affiliate with a party and challenged only the timing or scope of their ability to do so, Plaintiffs do not wish to affiliate, and the burden on them is the compelled affiliation itself, a burden neither decision addressed. A severe burden is subject to strict scrutiny under *Burdick* as well. 504 U.S. at 434.

49. The challenged provisions are not necessary to serve any compelling state interest, and they are not narrowly tailored. Every interest the State may assert, including the parties' interest in selecting their own nominees, the prevention of party raiding, and the orderly administration of elections, can be fully served by a primary design that gives every qualified

voter a ballot, such as: a nonpartisan primary open to all voters, which the Supreme Court has recognized does not severely burden any party's associational rights, *Jones*, 530 U.S. at 585-86; *Washington State Grange*, 552 U.S. at 452-53, 458-59; a primary in which unenrolled voters may participate, which New York law already permits by party rule, N.Y. Elec. Law § 5-210(5)(f); a separate primary ballot for unenrolled voters; or party nomination by convention or petition alongside a single public primary. The State's own law confirms that enrollment is not necessary to the administration or integrity of a primary, because it allows any party to waive the condition at will. If enrollment were essential to running a fair primary, New York would not let the parties do without it. The State cannot call a requirement compelling when it leaves that requirement to the discretion of private organizations. See *Tashjian*, 479 U.S. at 217-25.

50. Defendants, acting under color of state law, have subjected and will continue to subject Plaintiffs to the deprivation of the right to vote secured by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.

## <u>SECOND CAUSE OF ACTION</u>

## 42 U.S.C. § 1983: Denial of the Right Not to Associate, and Unconstitutional Condition on the Franchise (First and Fourteenth Amendments)

51. Plaintiffs incorporate the foregoing paragraphs of this Complaint as if fully set forth herein.

52. The First Amendment protects the freedom of political association, which includes the right not to associate. *Roberts*, 468 U.S. at 622-23; *Jones*, 530 U.S. at 574. Freedom of association is an individual right. A political party's associational rights exist only because, and only to the extent that, the individuals who compose the party possess them. *NAACP v. Alabama*, 357 U.S. at 460; *Roberts*, 468 U.S. at 622; *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957) (plurality opinion) ("Any interference with the freedom of a party is simultaneously

an interference with the freedom of its adherents."); see *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357 (1997).

53. In *Jones*, the Supreme Court held that a State's decision to require political parties to open their nominating elections to non-members was subject to strict scrutiny because it forced the parties' members to associate, in the selection of their standard-bearer, with persons who had not joined them, and struck the law because the State's interests could be served by a nonpartisan primary that did not severely burden anyone's associational rights. 530 U.S. at 577-82, 585-86. Plaintiffs Rieckhoff and Rouse and the voters Organizational Plaintiffs serve possess the same right not to associate with a political party that party members possess not to associate with them. The State has burdened that right directly: it has conditioned the exercise of the franchise at the integral stage of its public elections on the voter's agreement to join a party. A right of non-association that the Constitution protects with strict scrutiny when asserted by a party cannot be protected with less when asserted by the individual voter from whom the party's right derives.

54. *Jones* observed that a non-member's interest in participating in a party's selection of its nominee is overborne by the party's right to determine its own membership, and that selecting a party's candidate is different from voting for the candidate of one's choice. 530 U.S. at 573 n.5, 583-84. Plaintiffs assert no interest in selecting any party's candidate. The right they assert is the right not to be compelled to join a party as the condition of voting in an election the State conducts. That right is not in tension with any party's right to select its own nominee; the State has several ways to do both, *Jones*, 530 U.S. at 585-86; *Washington State Grange*, 552 U.S. at 452-53; N.Y. Elec. Law § 5-210(5)(f), and to the extent the two are in conflict in New York, the conflict is of the State's own creation. *Jones*, 530 U.S. at 586. Indeed, New York has

delegated to the parties themselves the decision whether unenrolled voters may cast a ballot at the primary stage of its public elections. N.Y. Elec. Law § 5-210(5)(f). Whom a party admits to its own affairs is a private decision made by the political parties; whether a qualified voter may vote in an election the State conducts is not a decision the State may surrender to a private association.

55. The challenged provisions condition the exercise of one constitutional right on the surrender of another. The government may not deny a benefit to a person on a basis that infringes his constitutionally protected interests, including freedom of association, even if he has no entitlement to that benefit, *Perry v. Sindermann*, 408 U.S. 593, 597 (1972); still less may it condition a fundamental right on that surrender. Unenrolled voters who refuse to surrender their right of non-association are denied a ballot in every primary election. Voters who enroll in a party solely in order to vote, including Plaintiff Rouse and voters the Organizational Plaintiffs serve, are compelled to associate with a private political organization as a condition of exercising the franchise, and remain publicly identified with it for as long as they wish to retain the ability to vote in primaries.

56. The challenged provisions are subject to strict scrutiny and cannot survive it. They serve no compelling interest that a primary open to every qualified voter, in any of the forms described above, would not serve equally well, and they are not narrowly tailored. They fail any lesser standard for the same reason.

57. Defendants, acting under color of state law, have subjected and will continue to subject Plaintiffs to the deprivation of the freedom of association secured by the First Amendment and made applicable to the States by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.

## THIRD CAUSE OF ACTION

**42 U.S.C. § 1983: Compelled Public Disclosure of Political Affiliation (First and Fourteenth Amendments)**

58. Plaintiffs incorporate the foregoing paragraphs of this Complaint as if fully set forth herein.

59. The First Amendment protects the privacy of political association. Compelled disclosure of a person's political affiliations is subject to exacting scrutiny: the government must demonstrate a substantial relation between the disclosure requirement and a sufficiently important governmental interest, and the requirement must be narrowly tailored to that interest. *Bonta*, 594 U.S. at 608-11; *NAACP v. Alabama*, 357 U.S. at 462-63; *Buckley v. Valeo*, 424 U.S. 1, 64 (1976).

60. New York conditions participation in the primary election on a sworn public declaration of party affiliation. N.Y. Elec. Law §§ 8-302(4), 5-210(5)(k)(xii), 3-220(1), 5-604(1). The disclosure is not incidental; it is the mechanism by which the ballot is granted or withheld. A voter who declines to make it is denied the primary ballot. A voter who makes it does so as the price of a fundamental right, and the disclosure follows the voter in the public record and in the voter files compiled from it thereafter. Plaintiff Rouse made that declaration, and bore its publication, for nearly two decades. The Supreme Court has observed that "the requirement of public affiliation with the Party in order to vote in the primary conditions the exercise of the associational right upon the making of a public statement of adherence to the Party which the State requires regardless of the actual beliefs of the individual voter." *Tashjian*, 479 U.S. at 216.

61. The State has no sufficiently important interest in compelling a public declaration of party affiliation as a condition of voting, and the requirement is not narrowly tailored to any interest the State may assert. A nonpartisan primary requires no declaration of affiliation from

anyone, and a primary in which an unenrolled voter may request a ballot at the polls requires none in advance, under oath, or on the public record.

62. Defendants, acting under color of state law, have subjected and will continue to subject Plaintiffs to compelled disclosure of political affiliation in violation of the First and Fourteenth Amendments and 42 U.S.C. § 1983.

## FOURTH CAUSE OF ACTION
### 42 U.S.C. § 1983: Denial of Equal Protection (Fourteenth Amendment)

63. Plaintiffs incorporate the foregoing paragraphs of this Complaint as if fully set forth herein.

64. The Equal Protection Clause requires that, once the franchise is granted, each qualified voter be given an equal opportunity to participate in the election. *Hadley*, 397 U.S. at 56; *Reynolds*, 377 U.S. at 565-66. A classification that burdens the fundamental right to vote, or that penalizes the exercise of another constitutional right, is subject to strict scrutiny. *Dunn*, 405 U.S. at 335-42; *Kramer*, 395 U.S. at 626-28; *Shapiro v. Thompson*, 394 U.S. 618, 634 (1969), overruled in part on other grounds by *Edelman v. Jordan*, 415 U.S. 651 (1974).

65. The challenged provisions classify qualified voters on the basis of party enrollment. Enrolled voters are afforded a vote at the primary stage and a vote at the general election; unenrolled voters are afforded only the latter, and their general-election ballot counts only among choices already made by voters who were granted a ballot at the stage the unenrolled voter was denied. The disfavored class is defined by its members' exercise of the First Amendment right not to associate. The classification therefore both burdens the fundamental right to vote and penalizes the exercise of a constitutional right, and it is subject to strict scrutiny on each ground independently. *Dunn*, 405 U.S. at 335-42.

66. The classification is not necessary to serve any compelling state interest and is not narrowly tailored, and it does not survive any lesser standard of review. The Equal Protection Clause does not permit a State to give one qualified voter two votes in its election process and another qualified voter one because of the second voter's political affiliation.

67. Defendants, acting under color of state law, have subjected and will continue to subject Plaintiffs to the denial of the equal protection of the laws in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

Plaintiffs do not request, and this Complaint should not be read to request, any order requiring a political party to admit non-members to its nominating process or to accept the votes of non-members in the selection of its nominees. Plaintiffs request that the State be enjoined from conducting the primary stage of its public elections under a scheme that conditions a qualified voter's participation on party enrollment, leaving to the State the choice among constitutional alternatives.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A.Declaring that N.Y. Elec. Law §§ 1-104(9) and 8-302(4), and all related provisions of the Election Law, to the extent they condition a registered voter's participation in publicly funded, non-presidential primary elections on enrollment in a political party, violate the First and Fourteenth Amendments to the United States Constitution, on their face and as applied to unenrolled voters;

B.Preliminarily and permanently enjoining Defendants, their officers, agents, employees, successors, and all persons acting in concert with them, from enforcing the party enrollment

condition on participation in non-presidential primary elections, and from certifying, supervising, or otherwise administering non-presidential primary elections under the current scheme, and directing the State Board Defendants to instruct every board of elections in the State accordingly pursuant to N.Y. Elec. Law § 3-102;

C.Retaining jurisdiction for a reasonable period to permit the Legislature of the State of New York to choose among constitutional systems for the conduct of non-presidential primary elections, and, in the absence of timely legislative action, ordering such further relief as is necessary to ensure that no qualified voter is denied a ballot at the next scheduled non-presidential primary election, which may include directing that every qualified voter be permitted to cast a primary ballot regardless of party enrollment;

D.Awarding Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and as otherwise provided by law; and

E.Granting such other and further relief as the Court deems just and proper.

Dated: New York, New York

September 30, 2026

Respectfully submitted,

/s/Chad Peace S.
Lead Counsel for Plaintiffs
PEACE & SHEA LLP
2700 Adams Avenue, Suite 202
San Diego, California 92116
Tel: (619) 255-4461
Email: chad@peaceshea.com
(Member of the California Bar; application for admission pro hac vice forthcoming pursuant to Local Civil Rule 1.3(i))

Samuel Gregory

Samuel Gregory
Local Counsel and Attorney of Record
LAW OFFICES OF SAMUEL GREGORY, P.C.
75 Prospect Park Southwest E6
Brooklyn, New York 11215
Tel: (718) 222-2992
Email: sam@samgregory.com

Attorney for Plaintiffs